UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NELSON VALLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-00957 |
| ) | |
| RJM ACQUISITIONS, LLC, VERIFACTS, ) | |
| INC., and PROGRESSIVE FINANCIAL ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER RE:**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
**(Docs. 32 & 38)**

Plaintiff Nelson Valle claims that defendants RJM Acquisitions Funding, LLC (RJM) and Progressive Financial Services, Inc. (Progressive) willfully and negligently violated provisions of the Fair Credit Reporting Act (FCRA) by accessing his consumer credit report without permission. He also asserts common-law claims of invasion of privacy against each defendant. Both defendants have moved for summary judgment. (Docs. 32 & 38.)

### I.    Factual Background

The following facts are not genuinely in dispute.[1] On December 20 and 21, 2010, and April 26, 2011, RJM initiated inquiries regarding Valle's credit report from credit reporting agencies Experian and TransUnion. On September 27, 2010, Progressive requested Valle's credit report from Experian. (Doc. 1-1 at 3, 5-6.)

RJM is a debt acquisition and collection company based in Syosset, New York. In a sworn affidavit provided with RJM's motion for summary judgment, RJM's director of

---

[1] Although Valle denies many of defendants' statements of fact, he offers no evidence to show that these facts are genuinely disputed. *See BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (explaining that party opposing motion for summary judgment "may not rest upon mere conclusory allegations or denials" (quotation omitted)).

1

compliance, Douglas Greenberg, states that on December 5, 2006 RJM acquired an outstanding debt owed by Valle to Wachovia Bank. (Doc. 41-1 at 1.) Greenberg states that as part of RJM's ordinary course of business, it accesses debtors' consumer credit reports in order to properly investigate and collect outstanding debts. Greenberg states that RJM uses a product that provides automatic address updates for persons as to whom RJM has acquired debts. RJM received updates concerning Valle using that product, which apparently registered as the equivalent of RJM "pulling" his credit report on each occasion. (*Id.* at 2.)

Progressive is a collection agency based in Tempe, Arizona. (Doc. 34 at 1.) In a sworn affidavit, Progressive's director of government services, Patrick Downey, states that Progressive is one of a number of collection agencies authorized to collect student loans on behalf of the U.S. Department of Education. (Doc. 36.) In June or July 2010,[2] the Department of Education placed a student loan account in Valle's name with Progressive for collection. (*Id.*) Downey states that Progressive's collection services ordinarily include written and oral correspondence with the borrower on the account, as well as review of the borrower's credit reports. Downey states that Progressive requested Valle's credit report from Experian in July 2010 for the purpose of collecting Valle's defaulted student loan. (*Id.*)

## II.   Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

---

[2] Downey states that the loan was placed with Progressive on June 26, 2010, but the records attached to his affidavit state that the loan was placed with Progressive on July 26, 2010. The exact date is unimportant for the purpose of this decision.

2

### III. Analysis

#### A. Sufficiency of Affidavits

As a preliminary matter, the court must address the sufficiency of the affidavits submitted by Douglas Greenberg and Patrick Downey, which form the majority of the factual record. Valle challenges the admissibility of the affidavits on the grounds that each one is "not properly authenticated, is hearsay, and refers to facts not in evidence before the court." (Doc. 52 at 11; Doc. 49 at 11.) The court disagrees.

Rule 56 permits parties to support their factual positions with affidavits. Fed. R. Civ. P. 56(c). As Greenberg's affidavit states, it is based on Greenberg's personal review of RJM's files. Downey's affidavit contains a similar statement with regard to Progressive's files. Such files would likely be admissible hearsay as records of a regularly conducted activity of RJM or Progressive. Fed. R. Evid. 803(6). Contrary to Valle's argument, defendants are not required to produce the custodian of such records in order to admit them at trial; it is sufficient for defendants to use the testimony of a "qualified witness," which both Greenberg and Downey would be. *Id.*

Valle also argues that the affidavits must be rejected because they do not state "under penalty of perjury" that they are "true and correct." 28 U.S.C. § 1746. Section 1746 requires such language in order to support an *unsworn* declaration. *Id.* The statute is inapplicable to affidavits sworn to before a notary, as both Greenberg's and Downey's affidavits were. (Docs. 41, 50.) *See* Reporter's Notes, 2010 Amendments, Fed. R. Civ. P. 56 (noting that under modern Rule 56, summary judgment may be supported by a formal sworn affidavit or a written unsworn declaration subscribed in proper form as true under penalty of perjury under 28 U.S.C. § 1746).

The court accordingly will consider the affidavits in addressing the merits of defendants' motions.

#### B. FCRA Claims

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also* 15 U.S.C. § 1681. To further this goal, FCRA permits a

3

consumer reporting agency to provide a consumer credit report only for certain purposes, including "[t]o a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . . ." 15 U.S.C. § 1681b(a)(3). A consumer may recover damages from an entity that willfully or negligently obtains his or her consumer report for a purpose that is not permissible under § 1681b. 15 U.S.C. §§ 1681b; 1681n; 1681o; *Braun v. Client Servs. Inc.*, No. 12-CV-5256, 2014 WL 1613006 (S.D.N.Y. Mar. 31, 2014).

However, "a showing of a permissible purpose is a complete defense" to a claim that a defendant improperly obtained a plaintiff's consumer report. *Edge v. Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 117 (E.D.N.Y. 1999). Defendants argue that they are entitled to summary judgment because they requested Valle's credit reports to assist them in the "collection of an account," *i.e.*, delinquent debts owed by Valle. 15 U.S.C. § 1681b(a)(3).

Valle contends that neither defendant was collecting an "account" of his as permitted by the statute. The definitions section of FCRA states that "[t]he term[] 'account' . . . ha[s] the same meaning[] as in section 1693a of this title." 15 U.S.C. § 1681a. Section 1693a, in turn, defines "account" as "a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this title) . . . established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2). Since neither of the debts defendants were attempting to collect involved a deposit account, Valle argues that it was impermissible for either defendant to access his credit reports.

This argument "has been universally rejected by every court that has directly addressed it." *Harris v. NCO Fin. Sys.*, No. RDB-13-0259, 2013 WL 6858852, at *3 (D. Md. Dec. 23, 2013). "Relying on the 'collection of an account' language in § 1681b(a)(3)(A), courts . . . appear to be uniform in their agreement that a debt collector is permitted to obtain a consumer credit report for the purpose of collecting an outstanding debt." *Fritz v. Capital Mgmt. Servs., LP*, No. 2:12-cv-1725, 2013 WL 4648370, at *3 (W.D. Pa. Aug. 29, 2013) (collecting cases); *see also Norman v. Northland Grp. Inc.*, 495 F. App'x 425, 427 (5th Cir. 2012); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011); *Miller v. Wolpoff & Abramson, LLP*, 309 F. App'x 40, 43 (7th Cir. 2009); *Thomas v. U.S. Bank, N.A.*, 325 F. App'x 592, 593 (9th Cir.

4

2009). The court finds these decisions to be persuasive. Both defendants have provided evidence sufficient to show that they obtained Valle's consumer credit reports as part of their efforts to collect debts owed by Valle, which is a permissible purpose under FCRA.

It is true that the court ordinarily interprets statutes according to their plain meaning, and that read literally, the cross-reference in § 1681a(r)(4) may suggest that only deposit accounts are included in FCRA's definition of an "account." However, "where the literal meaning of a statute yields an illogical result or one manifestly not intended by the legislature, departure from strict adherence to statutory text may be warranted." *United States v. Whitley*, 529 F.3d 150, 156 (2d Cir. 2008). Given that one of the purposes of the statute is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of consumer credit," 15 U.S.C. § 1681(b), it would make little sense for the statute to apply only to deposit accounts. It is also not clear what the "collection of" a deposit account would mean in practical terms. In light of the broader context of the statute, the term "account" as used in § 1681b(a)(3) must be interpreted to include debts such as credit card accounts and student loans. *See Fritz*, 2013 WL 4848370, at *5 (stating FCRA "clearly contemplate[s] that the term 'account' encompasses credit card accounts").

Valle next argues that because he never had any direct contract or dealings with Progressive or RJM, neither company was permitted to obtain his credit report. However, a direct relationship is not required, as the Southern District of Georgia has explained:

> [I]t is not necessary for Plaintiff to have had direct dealings with Defendant . . . . [I]f a collection agency . . . is retained by a creditor to collect a debt owed by a consumer, then it typically has a permissible purpose for obtaining a consumer report in conjunction with its collection activities, so long as it seeks to use information in connection with a transaction that the consumer initiated with the creditor.

*Hinkle v. CBE Grp.*, No. CV 311-091, 2012 WL 681468, at *3 (S.D. Ga. Feb. 3, 2012), *report and recommendation adopted*, No. CV 311-091, 2012 WL 676267 (S.D. Ga. Feb. 29, 2012).

Valle's reliance on *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010), is misplaced. In *Pintos*, the plaintiff's car was towed and the towing company placed a lien on the vehicle to pay for its costs. The towing company later sold the vehicle when the plaintiff failed to reclaim it or pay the outstanding charges. The vehicle's sale price did not cover the amount

5

owed, so the towing company asserted a deficiency claim against the plaintiff and later transferred that claim to the defendant collection agency, which accessed the plaintiff's credit report in connection with its effort to collect the debt. The Ninth Circuit ruled that the defendant did not have a permissible purpose in accessing the plaintiff's credit report. *Id.* at 675. It reasoned that there was no "credit transaction" involving the plaintiff because she did not initiate the transaction—the towing request—that resulted in the defendant accessing her credit report. *Id.*

By contrast, defendants have produced sufficient evidence to show that Valle initiated the credit transactions that led to defendants' requests for Valle's credit report by seeking and obtaining loans from the original lenders. These actions by Valle led directly to defendants' inquiries into Valle's credit history as part of their efforts to collect on the outstanding debts. *See Fritz*, 2013 WL 4648370, at *4.

Valle contends that defendants cannot prove the existence of the underlying debts and that they must do so in order to prove that they had a permissible purpose for accessing his credit report. This argument also fails, because a debt collector is not required to validate a debt prior to attempting to collect it. *See* 15 U.S.C. § 1692g; *Fritz*, 2013 WL 4648370, at *6; *Wittenberg v. Wells Fargo Bank, N.A.*, 852 F. Supp. 2d 731, 753 (N.D. W. Va. 2012); *see also Bleich v. Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002) (explaining that under Fair Debt Collection Practices Act, debt collector is entitled to rely on creditor's representation that debt is valid unless and until debtor disputes debt). Defendants were entitled to rely on the representations of Wachovia and the Department of Education that debts were owed in Valle's name in the amounts reported when they began their efforts to collect those debts. There is no evidence that Valle disputed the debts which RJM and Progressive were attempting to collect. Valle does not allege that the debts were fraudulent or that he does not have delinquent accounts with Wachovia or the Department of Education. Indeed, Valle submitted what appears to be a redacted copy of his student loan promissory note to this court. (Doc. 52 at 56.)

Taken in the light most favorable to Valle, the record shows that defendants accessed Valle's consumer credit reports for a permissible purpose under FCRA, *i.e.*, the collection of a debt owed by Valle. Accordingly, defendants are entitled to summary judgment on Counts I and

6

II of Valle's complaint. Defendants are likewise entitled to summary judgment on Counts III and IV of Valle's complaint, which alleges that defendants obtained his credit report under false pretenses for an impermissible purpose. *See Edge*, 64 F. Supp. 2d at 117 ("Where a permissible purpose for obtaining the credit information is demonstrated, then, as a matter of law, the information cannot have been obtained under false pretenses.").

### C. Invasion of Privacy Claim

Defendants are also entitled to judgment as a matter of law on Count V of Valle's complaint, which alleges that defendants invaded his privacy by obtaining his credit reports. Section 1681h of FCRA provides:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any . . . user of information . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Although the term "user of information" has not been defined by the statute, the court is comfortable in concluding that both RJM and Progressive are "user[s] of information" as that term is contemplated by FCRA. *See Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 49 (2d Cir. 1997) (interpreting term "user of information" in prior version of § 1681n to include "a party that in the ordinary course of business would have occasion to request and receive credit reports from consumer reporting agencies"). Valle's invasion of privacy claims against defendants are therefore preempted. *See Robinson v. Greystone Alliance, LLC*, No. BPG-10-3658, 2011 WL 2601573, at *9 (D. Md. June 29, 2011) (granting summary judgment on plaintiff's defamation and negligence claims to debt collector which accessed plaintiff's credit report in effort to collect debt, a permissible purpose under FCRA).

7

## IV.     Conclusion

Defendants' motion for summary judgment is GRANTED. This disposes of all claims in this action.

Dated this 19th day of February, 2015.

                                                          /s/
                                      Geoffrey W. Crawford, Judge
                                      United States District Court